UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

POWER PROCESS ENGINEERING
COMPANY, INC.,

      Plaintiff,

Civil Case No.
16-CV-11524

vs.

HON. MARK A. GOLDSMITH

VALVTECHNOLOGIES, INC.,

    Defendant.
_____/

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT AND, IN THE ALTERNATIVE, MOTION FOR A MORE DEFINITE STATEMENT (Dkt. 14)**

This matter is before the Court on Defendant ValvTechnologies, Inc.'s ("VTI") motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), and in the alternative, for a more definite statement pursuant to Rule 12(e) (Dkt. 14). The issues have been fully briefed, and a hearing was held on December 1, 2016. VTI seeks a ruling that Plaintiff Power Process Engineering Company ("PPEC") has failed to state a claim because it has failed to plead facts sufficient to establish a contractual obligation to repurchase valves sold by VTI to PPEC. VTI argues that even if there was such an obligation, PPEC has not pleaded sufficient facts demonstrating that VTI breached this obligation. Furthermore, VTI argues that PPEC has failed to plead a legally viable claim for unjust enrichment because it has pleaded the existence of an enforceable contract that governs the present dispute and because it fails to allege facts sufficient to establish that it is without an adequate remedy at law. In the alternative, VTI moves for a

1

more definite statement from PPEC. For the reasons stated below, the Court grants in part and denies in part VTI's motion.

## I. BACKGROUND

VTI is a manufacturer of custom valves that are used in the oil and gas, power generation, nuclear generation, and petrochemicals industries. Am. Compl. ¶ 12 (Dkt. 12). In April 1991, VTI entered into a distribution agreement with PPEC, a valve distributor located in Farmington Hills, Michigan. Id. ¶ 14. PPEC and VTI entered into another distribution agreement on July 30, 2014. Id. These distribution agreements designated PPEC as VTI's authorized valve distributor in Michigan and Toledo, Ohio. Id.

The relevant portion of the 1991 agreement states that "Valvtech will negotiate in good faith to purchase distributor inventory in the event the distributor agreement is terminated by Valvtech. Full purchased price will be allowed on new, current design and resalable items." 1991 Agreement, Ex. B to Compl., at 7 (cm/ecf page) (Dkt. 1-3). The 2014 agreement has nearly identical language, stating that "Manufacturer will negotiate in good faith to purchase Distributor's inventory in the event that this Agreement is terminated by Manufacturer. Manufacturer will refund the full purchase price only for items of current design in new, re-saleable condition." 2014 Agreement, Ex. A to Compl., at 7-8 (Dkt. 1-2).

Throughout their business relationship, the vast majority of the valves PPEC purchased from VTI were used in the production of polycrystalline silicon, which PPEC would then resell to Hemlock Semi-Conductors ("Hemlock"). Id. ¶ 16. In December 2013, Hemlock abruptly stopped purchasing valves from PPEC. Id. ¶ 17.

On February 24, 2014, PPEC's representatives met with Barry Hoeffner, VTI's vice president of downstream and specialty products. Id. ¶ 18. At the meeting, PPEC's

representatives requested that VTI buy back the valves that PPEC had purchased for resale to Hemlock.  Id. ¶ 19.  In response, Hoeffner told PPEC's representatives that VTI would repurchase all of the valves that were intended for Hemlock.  Id. ¶ 20.  The valves were valued at $1,972,263.28.  Id. ¶ 28.  After the meeting, PPEC's representatives attempted to follow up with Hoeffner on numerous occasions regarding the repurchasing of the valves, to no avail.  Id. ¶ 22-23.  After several months, Hoeffner informed PPEC's representatives that VTI refused to repurchase the valves intended for Hemlock.  Id. ¶ 24.  On August 31, 2015, VTI informed PPEC that it was terminating the distribution agreements.  Id. ¶ 25.

After VTI terminated the agreements, PPEC wrote to VTI and demanded that VTI refund the full purchase price for the valves.  Id. ¶ 31.  According to PPEC, despite "numerous efforts, the Defendant never negotiated in good faith to repurchase the ValvTech Inventory.  Instead, the Defendant rejected outright Plaintiff's overtures and refused to refund the purchase price for even a single valve from the ValvTech Inventory."  Id. ¶ 33.

## II.  STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id.  "[D]ocuments attached to the pleadings become part of the pleadings and may be considered on a motion to dismiss."  Commercial Money Ctr., Inc.

3

v. Illinois Union Ins. Co., 508 F.3d 327, 335 (6th Cir. 2007). Furthermore, "when a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment." Id. at 335-336. Because the distribution agreements are attached to the pleadings and integral to the claims, they will be considered in the Court's ruling.

### III. ANALYSIS

PPEC's first cause of action against VTI is for breach of contract. "To state a claim for breach of contract under Michigan law, a plaintiff first must establish the elements of a valid contract." Bowlers' Alley, Inc. v. Cincinnati Ins. Co., 32 F. Supp. 3d 817, 822 (E.D. Mich. 2014). "Once a valid contract has been established, the plaintiff then must prove (1) the terms of the contract, (2) breach of those terms by the defendant, and (3) injury to the plaintiff resulting from the breach." Id.[1] VTI does not dispute that the distribution agreements constituted a valid contract. As a result, it must be determined, after reviewing the facts alleged in the complaint and attached distribution agreements, whether PPEC has plausibly alleged that VTI breached the contract.

Regarding the terms of the contract that require performance, PPEC alleges that "[t]he Distribution Agreements required Defendant to negotiate in good faith to repurchase the ValvTech Inventory upon termination by Defendant." Am. Compl. ¶ 26. The complaint also alleges that "[f]urthermore, the Distribution Agreement required Defendant to refund the full

---

[1] Under Texas law, the elements of a breach of contract are "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained as a result of the breach." B & W Supply, Inc. v. Beckman, 305 S.W.3d 10, 16 (Tex. App. 2009). Neither distribution agreement contains a choice of law provision, and neither party has taken a position as to which state law controls at this point in the proceedings. In any case, the disposition of the motion is not affected by the choice of law.

purchased price for all ValvTech Inventory that was of current design, resalable and new." Id. ¶ 27. The 1991 distribution agreement states that "Valvtech will negotiate in good faith to purchase distributor inventory in the event the distributor agreement is terminated by Valvtech. Full purchased price will be allowed on new, current design and resalable items. Return of inventory not otherwise covered herein will be negotiated at the time of termination." 1991 Agreement at 7 (cm/ecf page). The 2014 agreement contains nearly identical language to the first two provisions, but omits the provision that "[r]eturn of inventory not otherwise covered herein will be negotiated at the time of termination." 2014 Agreement at 7-8.

The 1991 distribution agreement appears to provide clear instructions regarding VTI's obligations upon termination. If the items are new, of current design and resalable, then VTI must pay PPEC the full purchased price. If the items do not meet this description, then VTI is under an obligation to negotiate in good faith at the time of termination.

In light of these provisions, PPEC has alleged specific facts demonstrating that VTI breached its obligation to provide PPEC with the full purchased price. PPEC alleges that "[t]he ValvTech Inventory has never been used and is in brand new condition." Am Compl. ¶ 29. It also alleges that "Defendant is currently offering for sale to its global network of customers valves that are of the same design and character as the ValvTech Inventory." Id. ¶ 30. Despite the fact that PPEC was in possession of new valves that were of current design and resalable, VTI allegedly "rejected outright Plaintiff's overtures and refused to refund the purchase price for even a single valve from the ValvTech Inventory." Id. ¶ 33. By alleging VTI's failure to repurchase the new valves at full purchased price, PPEC set out specific facts to allow the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

VTI's obligation may be somewhat murkier under the 2014 distribution agreement. By excluding the final provision that "[r]eturn of inventory not otherwise covered herein will be negotiated at the time of termination," the 2014 distribution agreement is arguably ambiguous. "A contract is ambiguous when two provisions 'irreconcilably conflict with each other,' or 'when [a term] is equally susceptible to more than a single meaning." RBS Citizens Bank, N.A. v. Purther, 22 F. Supp. 3d 747, 752 (E.D. Mich. 2014) (quoting Coates v. Bastian Bros., Inc., 741 N.W.2d 539, 543 (Mich. Ct. App. 2007)). The first sentence indicates that VTI is under an obligation to negotiate in good faith to repurchase the valves, while the next sentence states that full purchase price will be given if the items are new, of current design and resalable. If, as PPEC alleges, all of the valves it possessed were new and of current design and resalable, Am. Compl. ¶¶ 29-30, it seems there would be no need for negotiations and VTI would be under an obligation to provide PPEC with the full purchase price.

However, even if the contract is read to require only that VTI negotiate in good faith, PPEC has pleaded sufficient facts to show that VTI failed to meet this obligation. In its amended complaint, PPEC states that "[a]fter the termination, Plaintiff sent correspondence to Defendant demanding that it comply with the terms of the Distribution Agreements." Id. ¶ 31. PPEC notes that "[d]espite Plaintiff's numerous efforts, the Defendant never negotiated in good faith to repurchase the ValvTech Inventory. Instead, the Defendant rejected outright Plaintiff's overtures and refused to refund the purchase price for even a single valve from the ValvTech Inventory." Id. ¶ 33. This averment provides sufficient facial plausibility, because it allows the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. By alleging that VTI rejected PPEC's overtures outright, PPEC implicitly alleges that VTI refused to negotiate at all. Failing to engage in any negotiation may well

demonstrate a lack of good faith. Moreover, the allegation that VTI refused to refund the purchase price of a single valve, when each valve was alleged to be new, of current design and resalable, Id. ¶¶ 29-30, lends support to PPEC's argument that VTI breached the agreement. As a result, PPEC has alleged sufficient facts to allow the Court to draw the reasonable inference that VTI either failed to negotiate in good faith or refund the purchase price for the valves, resulting in VTI's breach of the distribution agreement. Because PPEC has properly stated a claim for breach of contract, there is no need for a more definite statement pursuant to Rule 12(e).

VTI also argues that PPEC has failed to state a claim for unjust enrichment. The Court agrees. A plaintiff may assert a claim of unjust enrichment if "the defendant received and retained a benefit from the plaintiff and inequity has resulted." Bowlers' Alley, Inc., 32 F. Supp. 3d at 833 (applying Michigan law). Under such circumstances, the Court implies the existence of a contract. Id. The corollary being that a "party cannot recover under [the theory of unjust enrichment] when a transaction is governed by a valid contract." Id. (emphasis omitted). In other words, "alternative pleading of an implied contract claim is only allowed in a contract setting where a party doubts the existence of a contract." Id. (emphasis added). Here, VTI does not dispute that the distribution agreements constitute an express contract between the parties. The agreements expressly address the issue at hand, i.e., VTI's obligation to repurchase unsold valves from PPEC. While there is a dispute regarding whether VTI breached this provision, the fact remains that there is an express contract between the parties covering the subject matter in this suit, the existence of which neither party disputes. As a result, PPEC's unjust enrichment claim fails.

7

## IV.  CONCLUSION

For the reasons stated above, the Court grants in part and denies in part VTI's motion to dismiss (Dkt. 14).

SO ORDERED.

Dated:  December 6, 2016        s/Mark A. Goldsmith
       Detroit, Michigan           MARK A. GOLDSMITH
                                          United States District Judge


### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 6, 2016.

                                           s/Karri Sandusky
                                           Case Manager